**KANSAS CITY, MISSOURI, Plaintiff,**

v.

**KANSAS CITY, KANSAS,**
**Defendant.**

**No. 74 CV 124–W–1.**

United States District Court,
W. D. Missouri, W. D.

April 23, 1975.

Aaron A. Wilson, City Counselor, Reed O. Gentry, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for plaintiff.

Donald Martin, City Atty., Bill E. Fabian, McAnany, Van Cleave & Philips, Kansas City, Kan., Phil M. Cartmell, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

The present action pends on cross-motions for summary judgment filed by the parties under the terms of our order of May 16, 1974. As required by that order, the parties have filed a stipulation of fact, together with an agreement that the issues of liability presented in Counts I and II of plaintiff's complaint may be considered separately from the issue of damages or other relief. See Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, we find and conclude that plaintiff's motion should be granted.

### II.

#### Count I

*Stipulated Facts:*

1. On February 16, 1917, the City of Rosedale, Kansas and the City of Kansas City, Missouri, entered into a contract (attached hereto as Appendix A) which thereafter, because of the incorporation of the City of Rosedale, Kansas into the City of Kansas City, Kansas, became an obligation of the defendant as fully as though defendant had been an original signator thereto.

2. A supplemental agreement dated the 13th day of October, 1955 (attached hereto as Appendix B) was duly entered into between plaintiff and defendant.

3. Plaintiff constructed the sewer known as the Turkey Creek Sewer to which defendant connected its own storm and sanitary sewers, with said connection being within the city limits of plaintiff. Defendant has continued and still continues to deposit its sewage into the Turkey Creek Sewer and said sewage of defendant flows through a sewage treatment system of the plaintiff and is eventually deposited into the Missouri River Channel. When the flow is in excess of two and one-half (2½) times the normal dry weather flow, such flow by-passes the treatment facility of plaintiff and makes its way back across the State line to the Kansas River.

4. Subsequent to the execution of the contract, the Congress of the United States enacted legislation known as the Federal Water Pollution Control Act and Amendments of 1972, Title 33, U.S.C.A. § 1251 et seq.

5. In compliance with the provisions of the Act, plaintiff has installed and maintained and will in the future install

and maintain sewage treatment facilities and sewage treatment works for the purposes of treating that sewage discharged by defendant into the Turkey Creek Sewer as aforesaid. Plaintiff has also, in compliance with the Act, instituted a sewer service charge which is assessed against plaintiff's residents who use plaintiff's sewage treatment facilities and sewage treatment works, as well as against other communities and the residents thereof who do contract with plaintiff to use such facilities. However, neither defendant nor any of the residents of defendant whose sewage is discharged into the Turkey Creek Sewer pay any service charge to plaintiff for the use of such facilities and defendant has refused to make or to permit any such payment to be made for the purpose of defraying the cost of treatment of such sewage.

6. Plaintiff has made demand upon defendant to perform and comply with the provisions of the contract and to comply with the Act applicable thereto which has become a part of the contract, and to make payment to plaintiff of the defendant's share of the cost of operation and maintenance of such waste treatment service in direct proportion to the amount of sewage discharged by defendant into plaintiff's waste treatment works. Plaintiff has further demanded that defendant protect and hold harmless plaintiff from any expense, loss, or cost arising from the cost of the treatment of defendant's sewage. Defendant has refused to make any such payment and has refused in the future to make any such payment and has refused to protect plaintiff and hold plaintiff harmless from any such expense, loss, and cost arising from the treatment of defendant's sewage, as aforesaid.

7. The "Minutes of the Kansas State Board of Health, 31 May 1974" recite in part:

KANSAS CITY TURKEY CREEK INTERCEPTOR SEWER

Mr. William Fabian, special legal counsel for the city of Kansas City, Kansas appeared before the Board to explain delays in completion of sewerage system improvements in compliance with Board orders and approvals of projects by staff.

Mr. Fabian indicated that the Federal Environmental Protection Agency had considered the Turkey Creek Interceptor proposal for connection to the Kaw Point Treatment Plant and had rejected the proposal in favor of connection to the Kansas City, Missouri treatment plant. Kansas City, Missouri was now demanding cancellation of a long-standing contract, which has nothing to do with the Turkey Creek project, as part of the price for connection to the Missouri system in addition to back sewer service charges, future sewer service charges, and additionally the city of Kansas City sewage would discharge to a combined sewer in Missouri which would overflow in times of rainfall with the discharge of raw sewage back across the Kansas line to the Kansas River.

Mr. Gray reported that the Division of Environmental Health had approved plans and specifications for the Turkey Creek Interceptor, on or about 1 February 1973, for connection to the Kaw Point plant and had further approved connection to the Missouri system subject to several conditions which have not been met. A general discussion followed.

*Action:* Dr. Nelson moved that the Board adopt the following:

*The Kansas Board of Health hereby directs the city of Kansas City, Kansas to immediately proceed in the construction of the Turkey Creek Interceptor with connection to the Kaw Point plant in accord with plans and specifications approved by the Department on 1 February 1973. The Board totally rejects the proposal mandated by the Federal Environmental Protection Agency to connect the Interceptor to the Kansas City, Missouri system when the Missouri system*

**4**

*connection is a combined sewer which will discharge raw sewage to the Kansas River and additionally cause economic and political inequities."*

The motion was seconded by Dr. Merkel and carried unanimously.

8. Plaintiff's prayer for relief with regard to Count I seeks:

1. For a judgment declaring that defendant is required to hold plaintiff harmless of and from any expense, loss or cost arising from the treatment of sewage deposited by defendant in plaintiff's sewage treatment system through said Turkey Creek Sewer, and that defendant be ordered and decreed to bear its proportionate share of said treatment costs as hereinbefore set forth; or

2. In the alternative, for a judgment declaring that the obligation of plaintiff to continue to receive such sewage into the Turkey Creek Sewer as aforesaid and as deposited by defendant be terminated and the contract determined to be at an end; or

3. In the alternative, for a judgment declaring that the obligation of plaintiff to continue to receive defendant's sewage into Turkey Creek Sewer as aforesaid be conditioned upon an order of the Court declaring that defendant should bear its equitable and proportionate share of said treatment costs as hereinbefore set forth.

*Conclusions:*

Section 16 of the contract of February 16, 1917, provides that:

The City of Rosedale shall have the perpetual right and privilege to connect, at its expense, such storm sewers as may be deemed necessary and expedient in Rosedale, Kansas, and also such sanitary sewers as are now built, or which may hereafter be constructed, with said Kansas City Turkey Creek sewer, when built, at or near the intersection of the Southwest Boulevard and State Line, as an outlet for and as a means of drainage for the sewage and surface waters draining into and flowing through said sewers.

Plaintiff argues that under the terms of this provision it was obligated only to extend to defendant the "privilege" of transmitting defendant's untreated sewage through its sewer lines for discharge into the Missouri River. Under such an analysis, it is argued that plaintiff did not assume "any obligation to perform any function with respect to defendant's sewage, treatment or otherwise . . ." Since the Federal Water Pollution Control Act and Amendments of 1972 prohibit such untreated discharges, plaintiff contends that this case falls within the rule stated in the Restatement of Contracts § 458 (1932), which provides that:

A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited

(a) by the Constitution or a statute of the United States, or by any one of the United States whose law determines the validity and effect of the contract.

Defendant, on the other hand, argues that plaintiff's duty under the 1917 contract was to "accept" defendant's sewage and thereafter dispose of it by any method it chose. This duty has not been rendered impossible, it is argued, inasmuch as plaintiff may presently dispose of the waste by treating it as required by the Act.

After careful consideration of the cases and controlling principles of law, we conclude that plaintiff must prevail.

**A.**

The fundamental rule for construing the language of a contract is to ascertain and give effect to the intent of the parties. H. K. Porter Co. v. Wire Rope Corp. of America, 367 F.2d 653

(8th Cir. 1966); Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501 (Mo.1952). Such intent must be inferred from the language of the parties, the subject matter of the contract, the surrounding facts and circumstances leading up to and attending the execution of the contract, and the apparent purpose which the parties were undertaking to accomplish. Veatch v. Black, *supra.*

The specific language used by the parties in the 1917 contract strongly suggests that Section 16 was not intended to impose any affirmative duty on plaintiff to dispose of defendant's sewage. That provision merely gave the defendant "the perpetual right and privilege to connect" its sewers with the plaintiff's line. No "duty" was imposed on the plaintiff in this regard, other than the requirement in Section 15 that plaintiff must construct adequate sewers to carry the sewage run-off. The clear implication of this language is that plaintiff's sole obligation was to allow defendant the use of the Turkey Creek sewer to dispose of its sewage. In view of the absence of any language to the contrary, we are persuaded that the parties intended the ultimate responsibility for the disposal of such sewage to remain on defendant.

This construction of the parties' intent is consistent with the purpose of the contract which was, according to the "Recitals" in the contract, to control overflows from Turkey Creek which caused flooding within the municipal limits of both plaintiff and defendant. The apparent purpose of Section 16 was to provide defendant with an outlet for the waters so diverted. This purpose was achieved by providing defendant with access to plaintiff's Turkey Creek sewer, which was to have adequate capacity to handle the flow.

More importantly, this construction is consistent with "the rule that agree-ments are to be interpreted in the light of the circumstances and the intent of the parties when they enter into the agreement." Rhoden Investment Co. v. Sears, Roebuck & Co., 499 S.W.2d 375, 383 (Mo.1973). Defendant concedes that "the original contracting parties did not foresee Federal requirements of sewage treatment and the expenses attendant thereto when they entered into the original agreement." Indeed, it is apparent from reading the entire contract that the parties in fact did not foresee the possibility that any pollution controls whatever would ever be imposed.

■ Construing these circumstances consistently with the language used in Section 16, we must conclude that the parties did not intend to require the plaintiff to treat defendant's sewage without further compensation in order to meet federal pollution standards. Instead, we find that the plaintiff's only duty was to allow defendant to use the Turkey Creek sewer to transport the latter's sewage to the Missouri River.[1] As Judge Ridge stated in A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., 108 F.Supp. 644, 648 (W.D.Mo.1953), aff'd. 212 F.2d 812 (8th Cir. 1954):

A contract is not to be presumed to have imposed an absurd or impossible condition on one of the parties, but will be interpreted as the parties must be supposed to have understood its terms at the time they consummated their bargain. [Citations omitted] So in an interpretation which evolves an unreasonable result, when a more probable and reasonable construction can be adopted, every intendment will be against the former construction or one which would operate as a snare.

The remaining question is whether this duty has, within the meaning of the language in § 458 of the Restatement, been "discharged" by supervening feder-

1. Defendant argues that the 1955 agreement (Appendix B) somehow changes this result inasmuch as pollution controls were allegedly foreseeable at that time. Defendant has not articulated any theory to support this claim, and we conclude that any argument in that regard is without merit.

al legislation. We find and conclude that it has. Federal law now prohibits, upon pain of both civil and criminal penalties, the discharge of untreated sewage into streams such as the Missouri River. See 33 U.S.C.A. § 1319. It is obvious that once defendant's sewage reaches plaintiff's line, it becomes intermingled with and cannot be separated from plaintiff's own flow. Thus, as a practical matter plaintiff cannot allow defendant any right or privilege to merely "use" its sewer to discharge the latter's wastes into the Missouri River without plaintiff itself violating federal law.

In such situations, the rule stated in § 458 of the Restatement of Contracts, *supra,* is applicable. That is, when a contractual duty cannot be performed without violating the law, the duty of performance is discharged. See Ellis Gray Milling Co. v. Sheppard, 359 Mo. 505, 222 S.W.2d 742 (Mo.1949); Stein v. Bruce, 366 S.W.2d 732 (Mo.App.1963). For these reasons, we conclude that plaintiff's duty to allow defendant to use the Turkey Creek sewer to drain untreated waste into the Missouri River has been discharged.

### B.

The above conclusion is based on our finding that plaintiff's sole duty under the 1917 contract was merely to allow defendant to use the Turkey Creek sewer lines. However, even if we accept defendant's contention that plaintiff was under an affirmative duty to dispose of defendant's waste, we must conclude that plaintiff's duty has been discharged.

██ The gist of defendant's alternative argument is that plaintiff, being under an affirmative duty to dispose of defendant's waste, can perform its duties without violating the law by treating the waste prior to discharge. While acknowledging that this would greatly increase plaintiff's costs in handling defendant's sewage, defendant argues that this case is governed by the rule that "if a party, by his contract, charge himself with an obligation possible to be per-

formed, he must make it good unless its performance is rendered impossible by an act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him." Ward v. Haren, 119 S.W. 446, 448 (Mo.App. 1909). See also Ellis Gray Milling Co. v. Sheppard, *supra*; Kansas City Terminal Railway Co. v. Atchison, Topeka & Santa Fe Railway Co., 512 S.W.2d 415 (Mo.App.1974). We agree with defendant that this states a recognized rule of decision. We disagree with defendant, however, that the rule is applicable to the undisputed circumstances of the present case. Defendant's argument assumes that no increase in expense, regardless of its cause or its magnitude, will operate to excuse performance. That argument is untenable.

Defendant's reliance on Kansas City Terminal Railway Co. v. Atchison, Topeka and Santa Fe Railway Co., *supra,* is misplaced. In that case, the Terminal brought suit against twelve railway companies for a declaratory judgment concerning the rights of private parties under a contract executed in 1909. Under that contract, the expenses of the Terminal's union passenger station were to be apportioned between the various railroads on the basis of the number of cars from each road using the passenger facility. With the decline in passenger rail traffic, the burden of paying these expenses shifted to the few railroads still operating passenger trains, even though many of the facilities in the station were used by all railroads in their non-passenger operations. Those roads bearing the expense refused to pay, arguing in part that the change in circumstances had discharged them from performance of the terms of the contract.

On appeal from the trial court's ruling, the Missouri Court of Appeals, Kansas City District, found that the strict terms of the 1909 agreement remained in force, stating that:

Unforeseen difficulty or hardship will not free a party from performing

his contractual obligations *so long as* performance is not rendered impossible by "an Act of God, *the law* or the other party," *none of which is the case here.* Ellis Gray Milling Co. v. Sheppard, 159 Mo. 505, 222 S.W.2d 742 (banc 1949); Stein v. Bruce, 366 S.W.2d 732 (Mo.App.1963); and MFA Mutual Ins. Co. v. Farmers & Merchants Ins. Co., 443 S.W.2d 220 (Mo.App.1969). [512 S.W.2d at 422 (emphasis added)]

*Kansas City Terminal* therefore stands for the proposition that a contractual duty of performance will not be discharged merely because a general change in economic conditions has increased the expense of performance. But this does not mean that an extreme increase in the expense of performance, occasioned by the enactment of an unforeseen federal law, can never operate to discharge a contractual duty. Indeed, as the emphasized portions of the Missouri Court of Appeals' opinion demonstrate, that court also recognized that when a party to a contract encounters extreme and unforeseen difficulties in performance due to some supervening legislative enactment, the duty of performance will be discharged. *Kansas City Terminal* clearly recognizes that performance may be discharged and excused if, on the facts, the difficulties arise from "an Act of God, *the law* or the other party."

Defendant's answer concedes that the Federal Water Pollution Control Act and Amendments of 1972, 33 U.S.C.A. § 1251 et seq., imposes (a) a statutory requirement that all sewage and discharge of effluents into the Missouri River by plaintiff, which includes the sewage of the defendant discharged into plaintiff's sewer treatment system, be treated so as to reduce the level of pollution to standards as set forth in said Federal Act; and (b) that any and all grants by the United States Government for the construction of sewage treatment facilities and required in order to comply with the treatment standards as set forth in said Act, shall not be granted or extended to plaintiff unless a plan has been adopted specifying and warranting that all recipients of waste treatment services, including defendant, will pay a proportionate share of the cost of operation and maintenance of such required waste treatment services.

It is clear that the only way plaintiff could "accept" and "dispose" of defendant's sewage without violating federal law would be to treat the waste prior to discharge. The added expense of such treatment would impose a very significant burden on the plaintiff. And plaintiff's expense would be greatly increased by a cut-off of federal grants because of its failure to collect the necessary assessments from defendant or its residents as required by federal law.[2] For these reasons we find and conclude that plaintiff's duty to accept defendant's waste under the 1917 contract has been discharged.

### III.

*Stipulated Facts:*

1. Plaintiff constructed the Blue River Sewer to which defendant has connected storm and sanitary sewers with

2. In its brief in support of its motion for summary judgment, defendant argues that:

Factually, the plaintiff, Kansas City, Missouri, has not established that the Administrator has made a determination that those recipients of services under the 1917 contract are within Kansas City, Missouri's jurisdiction, or that Kansas City, Missouri has the legal capability of enforcing its regulations upon recipients extraterritorial to its boundaries without some contractual relationship with those recipients.

Without such a factual determination by the Administrator of K.P.A. the question arises as to whether Kansas City, Missouri has any standing to claim any loss past, present or future which is prefaced on the section quoted above.

We find that argument to be untenable in light of the admission made in defendant's answer. We further find and conclude that, even assuming no cut-off in federal funds would result, the added expense imposed on plaintiff to treat defendant's sewage is required by law and is so substantial as to require that plaintiff's duty of performance be discharged.

said connection being within plaintiff's city limits. Defendant has continued and still continues to deposit its sewage into the Blue River Sewer and said sewage of defendant flows through a sewage treatment system of the plaintiff and is eventually deposited into the channel of the Blue River and ultimately into the Missouri River channel.

2. Subsequent to the initial connection of the defendant's sewers into the Blue River Sewer of plaintiff, the Congress of the United States enacted legislation known as the Federal Water Pollution Control Act and Amendments of 1972, Title 33, U.S.C.A. § 1251 et seq.

3. In compliance with the provisions of the Act plaintiff has installed and maintained and will in the future install and maintain sewage treatment facilities and sewage treatment works for the purpose of treating that sewage discharged by defendant into the Blue River Sewer, as aforesaid. In compliance with said Act, plaintiff has instituted a sewer service charge which is assessed against plaintiff's residents who use plaintiff's treatment facility and sewage treatment works as well as against other communities and the residents thereof who contract with plaintiff to use such facility. Neither defendant nor any residents of defendant whose sewage is discharged into the Blue River Sewer pay any service charge to plaintiff for the use of said sewage treatment facilities and sewage treatment works. Defendant has refused to make or permit any such payment for the purpose of defraying the cost of the treatment of its sewage.

4. Plaintiff has made demand upon defendant to comply with the Act applicable to the discharge of defendant's sewage into the Blue River Sewer and to make payment to plaintiff of the defendant's share of the cost of operation and maintenance of such waste treatment service in direct proportion to the amount of sewage discharged by defendant into plaintiff's waste treatment works. Defendant has refused to make any such payment and has refused in the future to make any such payment.

5. The discharge of defendant's sewage into plaintiff's Blue River Sewer as aforesaid is without benefit of any contractual premise therefor and the discharge of such sewage by defendant is by sufferance of plaintiff.

6. Approximately one thousand (1,000) homes and originating depositories for sewage located in Kansas City, Kansas are serviced by said Blue River Sewer.

7. Within plaintiff's limits approximately fifty (50) houses are serviced by a collection sewer which empties into defendant's sewer collection lines and which in turn is emptied into the Turkey Creek Sewer of plaintiff. Defendant does not treat such sewage as it passes through its sewer lines and no charge for the flow of said sewage through defendant's lines is made by defendant or paid by plaintiff.

8. Plaintiff's prayer for relief with regard to Count II seeks:

1. For a judgment declaring that defendant be ordered and decreed to bear its proportionate share of said treatment cost as hereinbefore set forth; or

2. In the alternative, for a judgment declaring that plaintiff is not obligated to receive such sewage into the Blue River Sewage System as aforesaid and that said arrangements for sewage disposition be terminated upon reasonable notice to defendant; or

3. In the alternative, for a judgment declaring that the continuance of defendant's sewage deposited into the Blue River Sewage System as aforesaid be conditioned upon an order of this Court declaring that defendant shall bear its equal and proportionate share of the treatment costs hereinbefore set forth.

*Conclusions*

 The stipulation and briefs of the parties establish that there is no dispute

concerning the legal relationship of the parties under the facts alleged in Count II of plaintiff's complaint. As paragraph 5 of the stipulated facts states, the defendant's use of plaintiff's Blue River Sewer was merely by sufferance, and without any contractual basis.

Defendant suggests that any relief granted should be limited to plaintiff's third prayer for relief, i.e., to declare that the recipients of the sewer service "be required to pay their proportionate share of the cost of such service prospectively from the date of this Court's order." Plaintiff, on the other hand, argues that it is entitled to terminate defendant's connection with the Blue River Sewer as set forth in its second prayer for relief.

We find and conclude that plaintiff is entitled to appropriate relief in regard to Count II. We believe, however, that the relief to be granted in regard to Count II should be consistent with and keyed to the relief eventually awarded in regard to Count I. As we shall indicate in the next part of this opinion, we believe that entrance of our final declaratory judgment and final injunctive order should be deferred until after the Court has received the benefit of the views of counsel.

## IV.

### RELIEF

In connection with Count I plaintiff prayed for a judgment which would declare that the defendant be required to hold plaintiff harmless of and from any expense, loss, or cost arising from the treatment of sewage deposited by defendant in the Turkey Creek Sewer, and that the defendant be ordered and decreed to bear its proportionate share of the increased treatment costs occasioned by that deposit. Plaintiff also prayed in the alternative for a judgment declaring that any obligation on the part of plaintiff to continue to receive defendant's sewage into the Turkey Creek Sewer be determined to be at an end. Plaintiff

also prayed, as a still further alternative, for a judgment declaring that plaintiff's receipt of defendant's sewage into the Turkey Creek Sewer be conditioned upon an order of court declaring that defendant should bear its equitable and proportionate share of the increased treatment costs. Plaintiff's prayer for relief in connection with Count II, which relates to the Blue River Sewage system, follows a similar pattern.

We believe that it would not be appropriate to enter any final judgment without affording the parties an opportunity to convene and to attempt to agree upon a form of judgment which they deem to be appropriate under the circumstances. We do not believe it would be proper for this Court to fail to recognize that the parties are municipalities which have entered into many agreements over the years to solve the problems which arise by reason of the fact that each lie in a different State.

Both parties have demonstrated an exemplary spirit of cooperation in the processing of the relatively unique questions of law presented in this case. We believe that it is entirely possible that an agreement could be reached in regard to the preferable form of judgment, now that this Court has determined the questions of law presented. We do not suggest that the defendant may not wish to appeal the judgment of this Court when finally entered. Even if defendant may wish to appeal, we are confident that the parties should be afforded a reasonable opportunity to confer, and to recommend to the Court the most practicable form of judgment which should be entered in light of this Court's determination of the question of law presented in this case.

For the reasons stated, it is

Ordered (1) that within twenty (20) days, counsel for the respective parties shall confer, and shall thereafter present their suggestions to the Court in regard to the form of final judgment to be entered under the circumstances. It is further

Ordered (2) that in the event the parties are not able to agree upon a form of final judgment, counsel for the plaintiff, within twenty-five (25) days of this order, shall prepare, serve, and file a form of suggested final judgment which it believes is appropriate under the circumstances.

## APPENDIX A

### CONTRACT

THIS AGREEMENT, made and entered into this 16th day of February, 1917, by and between the City of Rosedale, a municipal corporation of Kansas, party of the first part, and Kansas City, a municipal corporation of Missouri, party of the second part, WITNESSETH:

### Recitals.

Turkey Creek flows through the limits of Rosedale, in the State of Kansas, into Kansas City, in the State of Missouri, thence through the limits of Kansas City, and again into the State of Kansas and the Kansas River. It frequently overflows its banks and causes great damage to property in Rosedale and Kansas City. The alteration, straightening and improvement of the channel of Turkey Creek and the diversion of the waters thereof into the Kansas River at a point north of Rosedale, and the construction of a sewer in Kansas City to carry the sewage which now flows in Turkey Creek would protect from future overflow the property both in Rosedale and Kansas City heretofore affected by overflows of said creek. Rosedale desires for the protection of property within its limits to alter, straighten and improve the channel of said creek and to construct a dam across said creek near Valley Street in Rosedale, a tunnel through certain hills, commonly called "Greystone Heights," to the Kansas River and a ditch connecting the present channel of said creek above the dam with said tunnel, and to divert Turkey Creek by means of such dam and ditch into and through said tunnel, and into the Kansas River, and has prepared and adopted a comprehensive general plan for such entire improvement. It is unwilling to construct a part of said improvement only, and intends to construct the entire improvement, but has not on hand or available, funds sufficient for that purpose, and has requested Kansas City to contribute a part of the cost thereof. Kansas City is willing to contribute a part of the cost thereof under the following conditions:

Therefore it is agreed:

1. **Description of the Improvement—Plans.** The present channel and natural course of Turkey Creek shall be

(1) Altered, changed and diverted northward at a point near the intersection of said creek with Valley Street, in Rosedale, by means of a dam and ditch into and through a tunnel under the hills, commonly called "Greystone Heights," into the Kansas River and beginning at the point where the St. Louis-San Francisco Railway Company crosses said creek near the Southwest Boulevard in Rosedale, said creek shall be straightened, cleaned and diked down to the point of diversion; and

(2) Said channel shall be altered, straightened and improved between the crossing of Turkey Creek and said railway immediately

north of the Southwest Boulevard in Rosedale, and the crossing of Turkey Creek and said railway at the west city limits of Rosedale, according to a general comprehensive plan therefor heretofore adopted by the City Council of Rosedale and filed in the office of the city clerk of the city of Rosedale. The plans and specifications for said improvement shall be approved by John Augustus Ockerson of St. Louis, Missouri, who is a recognized civil engineer and authority on such matters, or some other engineer of equal standing.

2. **Contributions by Kansas City.** Kansas City shall contribute to Rosedale at the times and in the manner herein specified a sum of money equal to the cost of the construction of the improvement specified in clause 1, paragraph 1 above, including the cost of the necessary lands and rights of way therefor, and the damages that may be awarded to property owners by reason of the reestablishing and changing of the grade of Valley Street as hereinafter mentioned, and of the engineering, supervision and inspection, legal, and other necessary incidental expenses in connection therewith, together with the cost of the services of said Ockerson or other engineering specialist, but Kansas City shall be liable for nothing else. A contract shall be let for the improvement specified in clause 1, paragraph 1, separately from the rest of the work.

3. **The Depositary—Funds Paid Out—How.** The Commerce Trust Company of Kansas City, Missouri, is hereby designated as the depositary which shall receive and hold all money paid by Kansas City, under this contract, in trust, for the purposes of carrying out this contract, and shall credit said fund with interest on daily balances at the rate of 2.23 per cent per annum. The money so provided shall be deposited with said trust company to the credit of the "City of Rosedale—Turkey Creek Tunnel Fund or Account," and shall be paid out from time to time for the purposes mentioned in paragraph 2 of this contract in the manner herein provided. When said fund is so deposited, said depositary shall so notify the City of Rosedale. Provided, however, that said depositary shall, if the following named banks of the City of Rosedale request and upon conditions and arrangements satisfactory to said depositary, redeposit not to exceed the sum of $25,000.00 with each of said banks, to-wit: The Commercial State Bank, the Rosedale State Bank, the Security State Bank and the Commerce State Bank, said banks paying to said depositary, the Commerce Trust Company, interest on daily balances at the rate of 2.23 per cent per annum, and said deposits shall be carried as quiet or inactive accounts. Except as provided in paragraph 10 hereof, whenever money is needed for any of such purposes, the City of Rosedale shall pass the necessary ordinances appropriating the same upon the joint requisition of L. R. Gates and the special counsel hereinafter designated. Warrants for such amounts shall be drawn in accordance with such ordinances upon such depositary and against said fund, signed by the Mayor, attested by the City Clerk, with the seal of Rosedale affixed thereto, and countersigned by the City Treasurer of Rosedale. The treasurer shall draw checks upon said fund and depositary upon presentation of said warrants. All persons, firms or corporations contracting with Rosedale for any of the matters or

things herein provided for shall do so upon the condition that they are to be paid only out of the funds as provided under the terms of this contract. Any portion of said fund so by Kansas City deposited remaining after the obligations of Kansas City under and by virtue of this contract shall have been fulfilled, shall be by said Trust Company returned to Kansas City.

4. **Duties of Rosedale—Plans—Procurement of Rights of Way—. Letting Contracts.** Immediately after the execution of this contract Rosedale shall secure all consents from municipalities, counties, persons and authorities necessary under the laws of Kansas to divert said creek and complete said entire improvement, and shall, prior to the time when said contribution shall be payable adopt by ordinance plans and specifications for the various parts of said work and make an estimate of the cost thereof, all of which shall be approved by the City Engineer of Rosedale and the consulting and supervising engineer hereinafter designated and appointed.

Within forty-five (45) days after Rosedale shall submit to Kansas City certified copies of the written consents of the municipalities, counties, persons and authorities necessary under the laws of Kansas to divert the creek, and shall notify Kansas City it is ready to let a contract to do the work provided in clause 1 of paragraph 1 hereof, Kansas City shall deposit with the Commerce Trust Company of Kansas City, Missouri, an amount of money equal to the estimated cost of said improvement and all the cost and expenses for which Kansas City is obligated under this contract, to meet the requirements of this contract.

If at any time it should appear that said estimated amount so deposited is not sufficient to meet all the obligations by Kansas City assumed under this contract, then Kansas City shall at once deposit with said Trust Company such additional sum or sums as will fully meet all such obligations.

Upon said fund being deposited by Kansas City as above set forth, the City of Rosedale shall immediately procure the necessary lands and rights of way by purchase, condemnation proceedings, or otherwise, for the construction of the improvement specified in clause 1, paragraph 1, hereof, and shall change and re-establish the grade of Valley Street as may be necessary on account of the construction of said improvement, and shall, as soon as it can legally be done after the payment of said money to said depositary, advertise for and let a contract or contracts to the lowest responsible bidder for the construction and completion of said improvement, in accordance with said plans and specifications.

The contract price of the improvement specified in clause 1, paragraph 1, hereof, shall be paid exclusively from the fund hereby created and in the manner herein provided, and not from any general revenue or special fund of the City of Rosedale. Such contractor or contractors shall give bond for the protection of materialmen and laborers as required by the laws of Kansas, and a good and sufficient surety bond in the penal sum of the amount of the contract, conditioned for the faithful and expeditious performance of said contract or contracts and to hold Rosedale harmless from loss or damage by breach thereof.

The City of Rosedale shall pass all necessary ordinances and resolutions and execute such contracts and do such other things as may be necessary and proper to carry into full effect the provisions of this agreement; and it hereby agrees that the dam across said Turkey Creek, the tunnel when built, and the altered and changed channel and course of said creek, when accomplished, at the points and in the manner provided for in this agreement, shall be forever permitted, kept and maintained, as provided for in the contract.

5. **Engineers—Duties and Compensation.** The City Engineer of Rosedale shall have general charge of the work; and the City of Rosedale hereby designates and appoints L. R. Ash of the firm of Harrington, Howard & Ash, consulting engineers of Kansas City, Missouri, to be consulting and supervising engineer in active charge of preparing and supervising the plans and specifications and the construction of the improvement specified in clause 1, paragraph 1, hereof. Said consulting and supervising engineer shall be paid from said funds for his services, which shall include engineering supervising and inspection, and the compensation of George R. Russell, who is to be employed by the consulting and supervising engineer, five per cent (5%) of the cost of the construction of said improvement, and said consulting engineer and George R. Russell shall employ and discharge all inspectors and pay them out of said five per cent (5%). Two per cent (2%) of said estimated amount shall be paid as soon as contracts are let for the work, two per cent (2%) when the work is estimated to be half completed, and the balance upon completion of the work. Said compensation shall be paid at said times out of the fund hereby created, and in the manner aforesaid.

6. **Attorneys—Duties and Compensation.** L. R. Gates, who is now the City Attorney of Rosedale, and James S. Gibson, shall have general charge of the legal matters connected with said improvement, specified in clause 1, paragraph 1, hereof, and, in connection with the special counsel hereinafter appointed, shall attend to the procurement of the necessary lands and rights of way, institute and prosecute all condemnation and other proceedings and institute or defend all other causes necessary to the construction and operation of said improvement. In the event that L. R. Gates should not be City Attorney of Rosedale at any time before the said improvement is completed, then and in such event the then City Attorney of Rosedale shall, in connection with L. R. Gates and James S. Gibson, have general charge of said matters. L. R. Gates and James S. Gibson shall be paid from said fund for their services in the manner aforesaid $4,000, one-half payable when a contract is let for the construction of said improvement specified in clause 1, paragraph 1, hereof, and one-half when all litigation, if any, connected with such portion of the improvement shall have been ended. When said portion of said improvement is completed and at the end of all litigation, if any, regarding same, they shall be paid additional compensation as follows: If the total cost of the lands and rights of way and land damages, including all court costs, abstracter's fees, witness fees and incidental expenses of that character, for said dam, ditch and tunnel, shall not exceed fifty thousand dollars, $1,500; if such total cost shall not exceed forty-five thousand

dollars, $2,000; if such total cost shall not exceed forty thousand dollars, $2,500; if such total cost shall not exceed thirty-five thousand dollars, $3,000; if such total cost shall not exceed thirty thousand dollars, $3,500; if such total cost shall not exceed twenty-five thousand dollars, $4,000; if such total cost shall not exceed twenty thousand dollars, $4,500; if such total cost shall not exceed fifteen thousand dollars, $5,000.

7. **Special Counsel—Duties and Compensation.** Rosedale hereby appoints John G. Park special counsel to assist in the accomplishment of this project; he shall be responsible for the speedy and economical performance of this contract and the execution of the improvement specified in clause 1, paragraph 1, hereof; he shall aid and assist the attorneys hereinbefore named in procuring the necessary lands and rights of way, in the prosecution of condemnation proceedings and in the defense or prosecution of any and every other variety of litigation which may arise in connection with said improvement or because of the projection of said improvement; he shall act as the attorney for the consulting and supervising engineer and the depositary in relation to said improvement, and render all other legal services necessary. He shall be paid for his services the sum of $4,000 out of the fund hereby created in the manner aforesaid, one-half when a contract shall be let for the improvement specified in clause 1, paragraph 1, and one-half when all litigation, if any, connected therewith shall have been ended.

8. **Contractor—How Paid.** The contractor or contractors doing the work of constructing said improvement specified in clause 1, paragraph 1, hereof, shall be paid from said fund in the manner aforesaid, as said work shall progress, upon the certificate of the City Engineer of Rosedale and the consulting and supervising engineer. Said certificates shall not be issued oftener than once every calendar month after the beginning of the work. The first of said certificates shall show the value of labor and material which shall have entered into the construction of said work up to the date thereof and the value of materials delivered at site, but not in structure, and each succeeding certificate shall show the value of such labor and materials furnished, delivered and used since the date of the last preceding certificate. The amount to be paid to said contractor or contractors in the manner aforesaid, from time to time, shall not at any time or in any event exceed ninety per cent of the amount specified in the certificate, less all previous payments. The remaining ten per cent shall be paid out of the fund hereby created, in the manner aforesaid, to such contractor or contractors upon the final certificate of said City Engineer of Rosedale and the consulting and supervising engineer that the construction of said improvement has been completed in accordance with the contract, plans and specifications therefor.

9. **Incidental Expenses—How Paid.** The necessary incidental expenses connected with said improvement specified in clause 1, paragraph 1, thereof, shall be paid out of the fund hereby created upon requisitions of the special counsel and L. R. Gates in the manner aforesaid.

**10. Funds for Rights of Way—How Obtained.** The money necessary for the acquisition of the necessary land and rights of way for the construction of the improvement specified in clause 1, paragraph 1, hereof, shall be available as soon as paid to the depositary; and said money, or any part thereof needed for said purpose, shall be payable immediately by said depositary upon the joint requisition of L. R. Gates and the special counsel, whenever the title to said lands and rights of way, or any of them, is approved by said L. R. Gates and the special counsel.

**11. Account of Expenditures.** Separate and accurate accounts of all money to be expended under paragraph 2 of this agreement shall be kept by the special counsel and filed with the City Clerk of the City of Rosedale.

**12. Bonds of Engineer and Special Counsel.** The special counsel and the consulting and supervising engineer herein named shall each execute a bond to the City of Rosedale with a solvent surety company as surety in the penal sum of $25,000.00 for the faithful performance of his duties and to account for all money which may come into his hands or under his control under this contract. Said bonds shall be approved by the Mayor of Rosedale and City Council and the premiums therefor paid out of fund hereby created.

**13. Kansas City to Have No Control.** Kansas City shall have no control or supervision of the construction or maintenance of said improvement mentioned in clause 1 of paragraph 1 herein, and shall not in any way be responsible therefor, nor have any interest therein, except as provided in this contract, but said improvement and the work of the construction and maintenance thereof shall be exclusively a public work of the City of Rosedale.

**14. Termination of Contract.** In the event that no contract shall be let by Rosedale for the doing of the work specified in clause 1, paragraph 1, hereof, on or before July 1, 1918, this contract shall be null and void, and any moneys not paid out under this contract shall then be returned to Kansas City.

**15. Turkey Creek Sewer.** Kansas City shall, within three years after the completion of said improvement, complete the construction of adequate sewers in Missouri to carry off the sanitary sewage and storm water which flows into the channel of Turkey Creek in Missouri. If the completion of said sewer shall be delayed by strikes, act of God, or litigation, the time of said delay shall be added to the time specified in this paragraph.

**16. Rosedale to Connect with Turkey Creek Sewer—Conditions.** It is also further agreed that the City of Rosedale shall have the perpetual right and privilege to connect, at its expense, such storm sewers as may be deemed necessary and expedient in Rosedale, Kansas, and also such sanitary sewers as are now built, or which may hereafter be constructed, with said Kansas City Turkey Creek sewer, when built, at or near the intersection of the Southwest Boulevard and State Line, as an outlet for and as a means of drainage for the sewage and surface waters draining into and flowing through said sewers.

That in order to fully carry out and construct said Turkey Creek improvements and sewers so that they may be effectual in carrying the sewage and storm waters from Rosedale into and through the Turkey Creek sewer, at or near the intersection of the Southwest Boulevard with the State Line, the manholes in that portion of the Rosedale sewers connecting therewith are to be changed and rebuilt by Rosedale, according to plans and specifications prepared by the City Engineer of Rosedale, and approved by the City Engineer and Board of Public Works of Kansas City, Missouri, so as to effectually prevent water from finding its way out of the sewers either through catchbasins in the streets, manholes, or the sewers themselves and house connections below an elevation of forty feet above the Kansas City datum. This applies to the area lying directly east of the Southwest Boulevard, to the Southwest Boulevard itself, and to the sanitary sewers built by the City of Rosedale through the Missouri, Kansas & Texas Railway Company freight yards immediately west of the State Line, and to such other sanitary and storm sewers as are now or may hereafter be built in these low areas.

In consideration of being permitted to use said sewer, the City of Rosedale hereby agrees that it will, at all times, protect and hold Kansas City harmless and free from damages and expenses and against any loss, cost or expense of any nature to property and persons arising out of or connected with the making and maintaining of its connections with said sewer.

**17. Rosedale to Maintain Improvement.** Whenever the improvement specified in clause 1, paragraph 1, hereof, shall require repairing, the City Engineer of the City of Rosedale shall prepare plans, specifications and an estimate of the reasonable cost of such repair, and when approved by ordinance of the City of Rosedale, said city shall make requisition upon Kansas City for such reasonable cost, and thereupon Kansas City shall deposit the amount of such cost with the said depositary, or its successor, or some other responsible bank or trust company of Kansas City, Missouri, whereupon Rosedale shall let a contract therefor, and said depositary shall pay for the same, upon ordinances of Rosedale, in the manner provided by paragraph 3 hereof, and any unexpended balance shall be returned to Kansas City, Missouri.

IN WITNESS WHEREOF, the parties have executed this instrument subject to approval by ordinance of the City of Rosedale and Kansas City.

THE CITY OF ROSEDALE,
By S. H. RENNICK,

*Mayor.*

Attest:
A. H. SCHMEDINGHOFF,
*City Clerk of the City of Rosedale.*
(L. .S.)

KANSAS CITY, MISSOURI,
By GEORGE H. EDWARDS,

*Mayor.*

Attest:

J. A. BERMINGHAM,
*City Clerk of Kansas City, Missouri.*
(L. S.)

The trust herein created in the Commerce Trust Company is hereby accepted.

COMMERCE TRUST COMPANY,
By W. S. MCLUCAS,
*President.*

H. C. SCHWITZGEBEL,
(L. S.)　　*Secretary.*

Approved as to form:

L. R. GATES,
*City Attorney of Rosedale.*

J. A. HARZFELD,
*City Counselor of Kansas City,
Missouri.*

STATE OF MISSOURI,
COUNTY OF JACKSON ⎬ ss.
　　KANSAS CITY.

I, J. A. Bermingham, the duly appointed, qualified and acting City Clerk of Kansas City, Missouri, do hereby certify that the annexed and foregoing is a true and correct copy of the original contract dated February 16, 1917, between Kansas City, Missouri, and the City of Rosedale, Kansas, relating to the diversion of the flood waters of Turkey Creek as the same remains of record and on file in my office in the City Hall, Kansas City, Missouri, and which was duly confirmed by the Common Council of Kansas City, Missouri, by ordinance No. 29086, approved on the 7th of March, 1917.

## APPENDIX B

### SUPPLEMENTAL AGREEMENT

THIS AGREEMENT, made and entered into as of the _____ day of October, 1955, by and between KANSAS CITY, KANSAS, a municipal corporation of the State of Kansas, and herein called the FIRST PARTY, and KANSAS CITY, MISSOURI, a municipal corporation of the State of Missouri, herein called the SECOND PARTY,

WITNESSETH: That

WHEREAS, the Second Party entered into a contract dated February 16, 1917, with the City of Rosedale, a municipal corporation of Kansas, relating to the improvement of Turkey Creek and the improvement of an outlet therefor, through the City of Rosedale, and

WHEREAS, the First Party now includes and has succeeded to the rights of the City of Rosedale under said contract, and

WHEREAS, pursuant to paragraph 17 of said contract, provision was made for the repair of the improvement specified in clause 1, paragraph 1 of said contract and the deposit of the estimated cost thereof, by Second Party with the depository designated in Section 3

of said contract, as the Commerce Trust Company of Kansas City, Missouri, and

WHEREAS, said paragraph 3 of the contract, provided that the funds deposited by the Second Party should be credited by the Commerce Trust Company aforesaid, with interest on the daily balance, at the rate of 2.23 per cent per annum, and said Commerce Trust Company, in spite of having accepted the trust imposed by said agreement is nevertheless now prohibited by the Banking Laws of the United States, from paying the interest provided in said agreement, and the said agreement, therefore, cannot be carried out in accordance with the express terms thereof, and

WHEREAS, the Second Party is ready to deposit the estimated cost of presently required repairs in the amount of $58,240.89.

IT IS THEREFORE AGREED BY THE PARTIES HERETO AS FOLLOWS:

The Agreement entered into under date of February 16, 1917, between the City of Rosedale and Kansas City, Missouri, is hereby modified by striking out of said agreement the said paragraph 3, entitled "The Depositary—Funds Paid Out—How", and in lieu thereof, the following Section shall be incorporated in said agreement as follows, to-wit:

"3—THE DEPOSITARY—FUNDS PAID OUT—HOW. The Commerce Trust Company of Kansas City, Missouri, is hereby designated as the 'Depositary' which shall receive and hold all money paid by Kansas City, Missouri, under this contract in trust, for the purposes of carrying out this contract, and without compensation other than the deposit of said funds. The money so provided shall be deposited with said Trust Company to the credit of the 'City of Kansas City, Kansas—Turkey Creek Tunnel Fund', and shall be paid out pursuant to the terms of Section 17, of this agreement. The procedure under which the said depositary, Commerce Trust Company, is authorized to make such payments is as follows:

Party of the First Part from time to time as the work progresses, or at the completion of the work, at its option, shall present to the Director of Public Works, Party of the Second Part, a requisition, original and copy, upon the Commerce Trust Company aforesaid, signed by its appropriate fiscal officer and supported by the certificate of its City Engineer, certifying in detail to the work performed and the cost thereof, for the approval of the Director of Public Works, Party of the Second Part. Upon the said Director of Public Works finding that the amount is properly payable, the original of said requisition shall be endorsed with the approval of the said Director of Public Works and the Director of Finance, Party of the Second Part, and returned to the Party of the First Part, for presentation to the depositary.

The payment by the depositary shall be made to the Party of the First Part or to its order. All persons, firms or corporations contracting with First Party for any of the matters or things relating to said repairs, shall do so upon the condition that they are

to be paid only out of the funds as provided under the terms of this contract. Any portion of said deposit or deposits so made by Party of the Second Part remaining after the completion of the work, shall upon certification of the City Engineer, Party of the First Part, be returned by said Commerce Trust Company, to Party of the Second Part."

All other provisions of said contract shall remain in effect.

IN WITNESS WHEREOF, the City of Kansas City, Kansas, as successor in interest to the City of Rosedale, Kansas, has caused this agreement to be executed by its Mayor and attested by its City Clerk, and the City of Kansas City, Missouri, has caused the same to be executed by its Mayor and attested by its City Clerk, all pursuant to Ordinances duly enacted by said representative cities.