Anne P. Gailis, U.S. Dept. of Justice, Washington, D.C., for E.P.A.

Allan Gates, Little Rock, Ark., and Allen T. Malone, Memphis, Tenn., for Vertac.

Alston Jennings, and N.M. Norton, Little Rock, Ark., for Hercules.

Cheryl Terai, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for Arkansas Department of Pollution Control and Ecology.

**UNITED STATES of America, Plaintiff,**

v.

**VERTAC CHEMICAL CORPORATION and Hercules, Inc., A Corporation, Defendants.**

**ARKANSAS DEPARTMENT OF POLLUTION CONTROL AND ECOLOGY, Plaintiff,**

v.

**VERTAC CHEMICAL CORPORATION and Hercules, Inc., A Corporation, Defendants.**

Nos. LR–C–80–109, LR–C–80–110.

United States District Court,
E.D. Arkansas, W.D.

July 18, 1984.

ORDER

HENRY WOODS, District Judge.

This Court approved the entry of a Consent Decree on January 18, 1982. This decree contemplated that the parties would ultimately reach a negotiated remedial plan for Vertac's Jacksonville plant site. Paragraph VI of the Consent Decree provides for dispute resolution by this court in the event the parties failed to reach a negotiated remedial plan. After exhaustive study of the plant site and protracted negotiations by the parties, no remedial plan has been approved by all of the parties. Vertac, Hercules and the State Department of Pollution Control and Ecology are satisfied with the plan prepared by Vertac's consultants. Additionally, Hercules and Vertac

have entered into an agreement concerning the sharing of the cost associated with implementing the remedial plan. However, the Environmental Protection Agency objected to Vertac's proposal and the parties have been unable to resolve their differences. Therefore, Vertac filed a petition pursuant to Paragraph VI of the Consent Decree seeking this court's intervention in the resolution of the dispute.

The history of the Jacksonville plant site as well as this litigation is fully developed in the Court's Memorandum Opinion and Order filed May 12, 1980 wherein preliminary injunctive relief was afforded the plaintiffs in these two consolidated cases. *United States v. Vertac Chemical Corporation,* 489 F.Supp. 870 (E.D.Ark.1980).

Paragraph VI(A) of the Consent Decree provides as follows:

(A) In the event a dispute should arise among Vertac, EPA and the State regarding any plan, proposal or implementation schedule required to be submitted by Vertac pursuant to the terms and provisions of this Consent Decree, Vertac shall, within 45 days after the expiration of the time allowed under paragraph V(B) for response by EPA/State, file a petition with this Court setting forth the proposal in dispute. In the event of a dispute between Vertac and EPA or the State, Vertac shall also have the burden of showing that its proposal is appropriate to fulfill the terms, conditions, requirements and goals of this Consent Decree. In resolving any dispute, the Court shall consider the nature of any endangerment, and the cost-effectiveness of alternate proposals which satisfy the goals of this Decree.

Vertac has the burden, under this dispute resolution procedure, of showing that its remedial proposal is appropriate to fulfill the terms, conditions, requirements and goals of the Consent Decree. The issue before this court is whether or not Vertac has met this burden and in making this determination the Court is required under the Consent Decree to consider:

1) the nature of any endangerment to human health or the environment,

2) the extent to which the various proposals would reduce any endangerment to human health or the environment; and

3) the cost-effectiveness of alternative proposals which would satisfy the goals of the Consent Decree.

The goal of the Consent Decree is the protection against endangerment to human health or the environment arising from present or prior operations or conditions at the Jacksonville plant site; provision for orderly and systematic storage, transfer, disposal or treatment of chemical wastes at the Jacksonville plant site; protection against migration of pollutants from the Jacksonville plant site into the environment; implementation of plans and remedies for restoration and/or containment of any contaminated ground water; the study of the condition of Rocky Branch Creek, the drainage ditch running from the east side of the plant site to Rocky Branch Creek, and Bayou Meto; and the study of Lake Dupree for potential remedial measures. (See Paragraph IV of Consent Decree).

Approximately two weeks of testimony was presented by the parties at the dispute resolution hearing and the Court is now prepared to make its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The alternative remedial plans address three basic sources of potential endangerment to human health and/or the environment.

   a) barrelled wastes containing up to 100 parts per million dioxin which are buried in the "North Burial Area".

   b) contaminants other than dioxin in the wastes buried on-site such as chlorinated phenols, anisoles, chlorinated benzenes, 2,4–D, 2,4,5–T in the "North Burial Area" and aldrin, dieldrin and DDT in the "Reasor-Hill Burial Area".

   c) low level concentrations of dioxin and chlorinated phenols in the East Ditch, Central Ditch and Cooling Pond.

2. There is not a serious danger of the dioxin, contained in the barrels in the "North Burial Area", moving off-site underground. Samples from the wells on-site demonstrate that it is very unlikely that dioxin will move subsurface in the groundwater even when a liquid organic solvent component such as toluene is present.

3. The non-dioxin wastes are more soluble in water than dioxin and are therefore more readily mobile in subsurface groundwater. However, the non-dioxin wastes are much less toxic than dioxin, and the monitoring wells in place and proposed provide adequate warning of any such groundwater transportation of wastes.

4. Vertac's negotiated remedial plan provides for on-site containment of the contaminants in a manner which prevents the fractures in the underlying bedrock from increasing the mobility of the contaminants off-site.

5. The negotiated remedial plan which Vertac seeks court approval of in the instant dispute resolution proceeding calls generally for permanent closure of the cooling water pond formed by Rocky Branch Creek near the western boundary of the site; solidification and encapsulation of cooling pond sediments in clay vaults at designated locations on the plant site; improving and extending the clay caps over the buried wastes, including 12 inches of topsoil on all caps and establishment of vegetative cover thereon; constructing additional slurry barrier walls in trenches dug into weathered bedrock in such a way as to divert the flow of groundwater away from the waste burial areas; construction of approximately 3,000 feet of additional French drains, together with a leachate collection and treatment system designed to prevent the escape of any contaminated groundwater off-site and to allow disposal of water in compliance with strict federal and state standards; a detailed monitoring and maintenance program to determine the continued effectiveness of the Vertac Plan; and the undertakings of Vertac and Hercules to remedy any defects which might become apparent in the future to assure that the Plan continues to meet the goals of the Consent Decree until such time as the Jacksonville plant should be closed as an active manufacturing facility, and for thirty years thereafter.

6. The Environmental Protection Agency's alternative remedial plan is described in Alternative IV of the report of CH2M Hill attached to the Environmental Protection Agency's response to Vertac's Petition for Dispute Resolution. Generally, this alternative calls for excavation and reburial. This proposal lacked in many respects as far as specific plans and specifications are concerned. While reburial in a Resource Conservation and Recovery Act site as suggested by the EPA has advantages over the current burial sites, the Court is convinced that any additional safety to human health and the environment achieved by this procedure is far exceeded by the risks of exposure from excavation.

7. The EPA proposal is inadequate in its provision for monitoring the possible off-site movement of contaminants.

8. Vertac's negotiated remedial plan is superior to the EPA alternative proposal in its protection of human health and the environment and is far more cost-effective.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this suit, pursuant to the provision of 28 U.S.C. § 1331 and of the Consent Decree entered herein on January 18, 1982.

2. In resolving the dispute between EPA, on the one hand, and Vertac, Hercules and the ADPCE, on the other, the Court must consider the nature of any endangerment to human health or the environment that is involved, the extent to which the various proposals would reduce any such endangerment, and the cost-effec-

tiveness of alternative proposals which satisfy the goals of the Consent Decree.

3. The Court concludes that the Negotiated Remedial Plan in the form attached as Exhibit A to Vertac's petition for dispute resolution herein, together with the supplemental financial assurance agreement in the form attached to the response filed by Hercules, is appropriate to fulfill the terms, conditions, requirements and goals of the Consent Decree, and that it is superior to the alternative proposed by the EPA in terms of safety and cost-effectiveness.

4. Considering the nature of potential endangerment to human health or the environment involved; the extent to which the Vertac Plan would reduce any such potential endangerment; the extent to which the implementation of alternatives proposed by EPA could increase such endangerment; and the relative cost-effectiveness of the alternative proposals, the Negotiated Remedial Plan is far superior to any alternative proposal submitted on behalf of EPA and should be approved.

5. EPA's claim for recovery of costs and expenses, as to Vertac, as asserted in the proposed amended and supplemental complaint which it seeks to file herein, was satisfied and merged into the terms of the Consent Decree itself pursuant to the provisions of paragraph XIV(A).

6. At this time, EPA's attempt to amend its complaint to seek a judgment for costs and injunctive relief against Hercules appears to be moot and without merit in view of the approval of the Vertac Plan.

7. For the foregoing reasons, EPA's petition for leave to file its amended and supplemental complaint herein is denied, but without prejudice to the right of either EPA or State to renew such a petition as was contemplated in paragraph XIV(C).

8. While the conduct of the EPA has been somewhat inconsistent and disconcerting, the court concludes that the defendants have failed to prove entitlement to an award of fees and costs in this case.

9. It is therefore ordered that Vertac begin immediate implementation of its remedial plan.