**UNITED STATES of America, Plaintiff,**

v.

**Charles E. KNOTE, et al., Defendants.**

**No. S 91–87 C.**

United States District Court,
E.D. Missouri,
Southeastern Division.

April 12, 1993.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, MO, for plaintiff.

Francis M. Gaffney, Sonnenschein Nath & Rosenthal, St. Louis, MO, John S. Hahn, Sonnenschein Nath & Rosenthal, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

LIMBAUGH, District Judge.

This matter is before the Court on the defendants' motion to enforce consent decree filed February 26, 1993. Responsive pleadings have been filed by both the Environmental Protection Agency (EPA) and the defendants.

In July 1991, the EPA brought suit against the defendants under Sections 104, 106(a), and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9604, 9606(a), and 9607(a), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), PL 99–499, 100 Stat. 1613 *et seq.*, and under Section 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973, as amended, for recovery of costs connected with the clean-up of a site hereinafter referred to as the "Kem–Pest Site".

Shortly thereafter the parties negotiated a Consent Decree which was approved and entered by this Court on September 24, 1991. At the time the Consent Decree was entered in 1991, the EPA's proposed remedial plan for the Kem–Pest Site included remediation of the formulation building by removing surface contamination and incineration of these residues, and restriction of utilization of the building for commercial and/or industrial purposes only. The remedial plan was set out in the EPA's 1990 Record of Decision [1] (1990 ROD) regarding this site.

The Consent Decree sets out the parties' mutual rights and obligations regarding the clean-up of the Kem–Pest Site. Under its terms, the EPA has complete access to the Site to investigate, monitor, inspect, and carry out response actions. The defendants agreed that the Consent Decree would not limit or restrict the nature or scope of response actions taken by the EPA in exercising its authority under federal law. The defendants further agreed to cooperate with the EPA in implementing the response actions and not to interfere with such response actions. The defendants reserved their rights to file any claim or cause of action, pursuant to the Federal Tort Claims Act (FTCA), against the United States for negligent or reckless damage to the Site, including the formulation building. Consent Decree—Section III. The EPA agreed to make available to the defendants samples and other data regarding the Site. Consent Decree—Section XVI. In consideration of the defendants' payment of $440,000.00 into the Superfund, the United States and the defendants agreed to mutual covenants not to sue. Consent Decree—Section X.

Finally, the Consent Decree sets forth a dispute resolution procedure for any disagreements "concerning implementation of this Decree." Consent Decree—Section

---

1. CERCLA requires the EPA to issue a detailed statement of its final remedial action plan for a site which explains the basis and the purpose for the selected plan. § 9613(k)(2)(B).

XIII. It also acknowledges the Court's continuing jurisdiction to enforce the terms of the Consent Decree. Consent Decree—Section XVII. The Court's jurisdiction terminates upon full payment by the defendants and certification by the EPA of the final operable unit remedial action as completed. When these conditions are met, the EPA agrees to file a motion asking the Court to enter an order marking the judgment as to the defendants satisfied. Consent Decree—Section XX.

On October 21, 1992 the EPA published a notice for public comment inviting public input as to its proposed amendment to the 1990 ROD. The 1990 Amendment modified the 1990 ROD to the extent that instead of cleaning and decontaminating the formulation building, the EPA was now proposing to destroy the building and haul the demolition debris away to a landfill. On November 12, 1992 the EPA conducted a public meeting on the proposed 1990 ROD Amendment. Defendant Elizabeth Knote, on behalf of the Knote family defendants, appeared and voiced her concerns and objections to the 1990 ROD Amendment. Her oral comments were supplemented in a letter sent to the EPA on February 2, 1993. On February 5, 1993 the EPA approved and issued the 1990 ROD Amendment and began making preparations for the demolition of the formulation building. On February 16, 1993 defendants' counsel contacted counsel for the EPA and informed him of the defendants' intentions to invoke the dispute resolution procedure under Section XIII of the Consent Decree in order to discuss and resolve the matter regarding the demolition of the formulation building. The EPA's response was generally negative and counsel indicated that the EPA had no obligation to discuss its choice of remedial action with the defendants.

The defendants have come to this Court seeking enforcement of the Consent Decree. They request the Court to enter an order determining that the dispute over the demolition of the formulation building and the EPA's failure to provide them with certain data regarding test samples of the building's interior structure are matters concerning the implementation of the Decree and therefore subject to the dispute resolution procedures under Section XIII.

The EPA's position is two-fold. Firstly, it argues that this Court lacks subject matter jurisdiction to entertain the defendants' motion because defendants are challenging a remedial action that has not been taken and CERCLA bars judicial pre-enforcement review of the merits of any remedial action. Secondly, the EPA contends that the Consent Decree in no way restricts the EPA from choosing any remedial action it wants, and furthermore, specifically prohibits the defendants from interfering with the EPA's chosen remedial action. It goes on to point out that the delays caused by the defendants in pursuing this action are increasing the response costs by approximately $1,700.00 per day and threatening the health, safety and welfare of the general public.

After reading the parties' pleadings in this matter, it is clear to the Court that the EPA's "concern" about public safety and the increasing costs to taxpayers is insincere and sanctimonious. The EPA's refusal to communicate with the defendants about the demolition of their building and its arrogant pontificating reflect nothing less than an attitude of supremacy tantamount to contempt. Were it not for the Consent Decree, this Court would have no choice but to acquiesce to the EPA's dictatorial power, however, the Consent Decree does exist and binds the EPA to the authority of this Court.

It is well-established that CERCLA limits federal court jurisdiction to five specific circumstances. 42 U.S.C. § 9613(h) provides in pertinent part:

No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected ... in any action except one of the following:

(1) An action under section 107 to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 106(a) or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 106(b)(2).

(4) An action under section 310 (relating to citizens suits) alleging that the removal or remedial action taken under section 104 or

secured under section 106 was in violation of any requirement of this Act. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 106 in ·which the United States has moved to compel a remedial action.

The courts have uniformly held that this statute precludes federal court jurisdiction over any challenge to a remedial action that the EPA has chosen but not yet implemented. *Fairchild Semiconductor Corp. v. U.S. E.P.A.,* 984 F.2d. 283, 286–7 (9th Cir.1993); *Schalk v. Reilly,* 900 F.2d 1091, 1095 (7th Cir.1990), *cert.den.,* 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *Solid State Circuits, Inc. v. U.S. E.P.A.,* 812 F.2d. 383, 386 n. 1 (8th Cir.1987); *City of Eureka, Mo. v. U.S.,* 770 F.Supp. 500, 502 (E.D.Mo.1991); 42 U.S.C. § 9613(h)(4).

The EPA asserts that by virtue of § 9613(h)(4) this Court lacks jurisdiction to review the merits of the 1990 ROD Amendment prior to an attempt by the EPA to enforce it. Under normal circumstances this would be an accurate statement. However, the circumstances of this case are not typical.

The Court is unable to find any caselaw to assist it in its decision-making. The EPA proffers *Fairchild, supra* as a case on point. The Court disagrees. In *Fairchild,* the EPA had not instituted a suit to recover response costs. Instead, a potentially responsible party sought to enforce the provisions of an administrative consent order entered into among itself, the EPA, and other parties. The plaintiff tried to avoid the jurisdictional bar of § 9613(h)(4) by establishing an independent basis for jurisdiction under § 9622(d)(3) [2]. *Fairchild,* at 287. However, the Court rejected this notion because § 9622 did not exist when the administrative consent order was executed. *Fairchild,* at 287. The Court further found that nothing in the language of § 9622 suggested an exception to the jurisdictional limits of § 9613(h). *Fairchild,* at 288. This Court also notes that there is no mention whatsoev-

er in the *Fairchild* decision about any terms within the administrative consent order regarding jurisdiction of any court to enforce the terms of the order.

The defendants rely on the case of *United States v. Vertac Chemical Corp.,* 588 F.Supp. 1294 (E.D.Ark.1984) and an unpublished decision from a Michigan district court, *United States v. Berlin and Farro Liquid Incineration, Inc.,* Civil Action No. 84–CV–8473–FL (E.D.Mich., September 27, 1990) in support of their position that this Court has jurisdiction to enforce the Consent Decree. Although both cases involved a district court enforcing the dispute resolution provision of a consent decree, the Court does not find these decisions to be as "on point" as the defendants do. The *Vertac Chemical* decision predates the existence of § 9613(h), therefore § 9613(h) was never an issue contemplated by the district court. The *Berlin and Farro Liquid Incineration* decision is unpublished and thus holds little precedential value. Although it appears to support the defendants' position, the Court can not rely upon a court order which provides no background information as to the nature of the dispute or the terms of the consent decree.

This leaves the Court with only the terms of the Consent Decree to consider. Section XIII provides for specific dispute resolution procedures to follow for any disagreement concerning the implementation of the Consent Decree. The EPA makes a rather incongruous argument for its position that the demolition of the formulation building falls outside the Consent Decree. First it contends that the demolition of the building could not be a part of consent decree implementation "for the simple reason that EPA had not decided whether demolition, or other remedial alternatives, would be best when the decree was negotiated and signed by defendants." EPA Response Brief, pg. 10. On the other hand, it states that in its feasibility study (which was done prior to the execution of the Consent Decree and was considered by the defendants in signing the

---

**2.** § 9622(d)(3) provides for enforcement, by a district court, of the obligations of a potentially responsible party pursuant to an agreement entered into by the President and a potentially responsible party under § 9604(b). The present situation does not fall under the enforcement provisions of § 9622(d)(3) because the defendants seek to enforce the EPA's obligations under the Consent Decree.

Consent Decree), "... demolition of the building and off-site disposal of the debris was a viable option. However, in its Record of Decision ("ROD"), on December 31, 1990, EPA determined that decontamination of the formulation building together with offsite incineration of the decontamination debris would be the remedy, though marginally more expensive than the demolition option." EPA Response Brief, pg. 5. It is ludicrous for the EPA to argue that demolition is now a brand new idea when it had been thoroughly analyzed and rejected by the EPA as evidenced by its own ROD. The Consent Decree was negotiated on the basis of the 1990 ROD which considered several remedial actions but chose decontamination of the building as the best remedy. The present matter is clearly a dispute regarding the implementation of the Consent Decree since it involves the EPA rejecting one remedial action under the Decree and attempting to implement another remedial action under the Decree.

As for this Court's jurisdiction, Section XX clearly provides for the Court's continuing jurisdiction over this matter. The Court had jurisdiction to approve the Consent Decree and the EPA has provided no caselaw to support its contention that § 9613 divests the Court of the jurisdiction it has always had, especially by the express terms of a consent decree which the EPA conveniently neglects to mention it also signed. If the officials of the EPA convinced the defendants to negotiate and sign this Consent Decree on the basis of the 1990 ROD (which elects decontamination of the formulation building as the remedy of choice) and the safeguards of the dispute resolution procedure and this Court's continuing jurisdiction, knowing that it considered the Consent Decree to be virtually meaningless and having no intention of abiding by its terms, such action would be considered fraudulent and sanctionable by this Court.

The EPA's toxic waste clean-up efforts are commendable, however, its vigorous protection of the environment does not make it an administrative deity. Congress intended CERCLA to provide the EPA with the means to respond quickly to any release or threatened release of hazardous waste products. It did not intend to give the EPA unfettered authority to deceive and bully people into submission. It is with guarded hope that this is not the situation that is presently unfolding before the Court. The Court would rather believe that the EPA negotiated the Consent Decree in good faith; that it did not deliberately deceive the defendants into signing the Consent Decree with assurances that the formulation building would be decontaminated and not demolished; that it fully intended to abide by Section XIII's dispute resolution procedures, and that it accepted and concurred with the Court's continuing jurisdiction over this matter as provided for in Section XX of the Consent Decree.

The EPA's decision to amend the 1990 ROD, a document whose findings and conclusions form the basis for the Consent Decree, is a dispute concerning the implementation of the Consent Decree. Furthermore, there is a question as to the factual support for the 1990 Amendment since it allegedly bases the decision to demolish on data that may not exist. See, Declaration of Larry D. Becker.[3] This Court had subject matter jurisdiction to adjudicate the EPA's original complaint, it had jurisdiction to approve and enter the Consent Decree, and by virtue of the Consent Decree, this Court has continuing jurisdiction to entertain the defendant's motion to enforce the Consent Decree.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to enforce the Consent Decree, filed February 26, 1993, be and is **GRANTED.**

---

**3.** In November 1990, Mr. Becker had taken samples of the block and mortar comprising the majority of the formulation building in order to document the level of contamination in materials removed during sandblasting and the amount of contamination still remaining in the block and mortar. These test samples were never analyzed due to budget constraints. However, the 1990 Amendment strongly implies that the decision to demolish was based on samples taken after the Consent Decree was entered, i.e. these samples. The defendants want these samples analyzed to see whether or not they support the EPA's decision to demolish the formulation building.

IT IS FURTHER ORDERED that the EPA and the defendants shall comply with Section XIII of the Consent Decree and engage in meaningful discussions regarding the EPA's decision to demolish the formulation building instead of decontamination and incineration of the residues.

IT IS FURTHER ORDERED that the EPA shall take all necessary steps to furnish the defendants with all the data it utilized in making its determination that demolition of the formulation building is now necessary. If the Becker test samples have not been analyzed, the EPA shall take whatever steps are necessary to have these samples independently analyzed and such data shall then be furnished to the defendants. Samples and other data, as referenced by Section XVI of the Consent Decree, shall be personally furnished to the defendants by the EPA. Pointing the defendants in the direction of the Cape Girardeau Public Library is not sufficient.

IT IS FINALLY ORDERED that the informal agreement between the parties to halt demolition plans pending resolution of this motion shall remain in effect until further notice of this Court.